

**SO ORDERED.**

**SIGNED this 7 day of January, 2015.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 14-02212-5-DMW |
| TONY HUNT, | CHAPTER 13 |
| DEBTOR. | |

### ORDER REGARDING OBJECTION TO CONFIRMATION
### AND MOTION FOR DECLARATORY RULING

This matter comes on to be heard upon the Minutes of 341 Meeting and Motion for Confirmation of Plan ("Motion") filed by Joseph A. Bledsoe III, Esq. ("Trustee"), the Chapter 13 trustee, and the Objection to Confirmation and Motion for Declaratory Ruling ("Objection") filed by State Employees' Credit Union ("SECU"). The court conducted a hearing in Fayetteville, North Carolina on July 24, 2014. Theodore A. Nodell, Jr., Esq. and Lien K. To, Esq. appeared on behalf of SECU, Chad W. Hammonds, Esq. appeared for Tony Hunt ("Debtor"), and the Trustee appeared *pro se*. At the conclusion of the hearing, the court took the matter under advisement and gave the parties fifteen days to submit additional briefs on the matter. Based upon the evidence presented, the arguments of counsel and the submitted briefs, the court makes the following findings of fact and conclusions of law:

A.   BACKGROUND

1.   On June 26, 2009, the Debtor executed a Promissory Note ("Note") and Deed of Trust in favor of SECU.  The Debtor's principal residence at 90 Rabbit Hill Drive, Lumberton, North Carolina serves as collateral for the Note.  The Note has a maturity date of August 1, 2039.

2.   The Debtor filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on April 16, 2014 ("Petition Date").  As of the Petition Date, the Debtor was current with his payments on the Note and has remained current on the payments since that date.

3.   SECU filed a Proof of Claim on May 2, 2014, asserting a claim ("Claim") in the amount of $79,861.02 representing the balance owed on the Note.

4.   The Debtor's plan ("Plan"), for which the Trustee seeks confirmation, provides that the Debtor will make direct payments on the Note "outside" the Plan, meaning that the Debtor will continue making payments directly to SECU and not through the Trustee.[1]  The Plan also states that for the SECU debt relating to "pre-petition arrears," the amount to be paid directly by the Debtor is "-0-."  In the "Curing Defaults" section, the Plan states "NONE."

5.   SECU filed the Objection on July 3, 2014 seeking a determination that the long-term debt is non-dischargeable, even though the Debtor was current on his payments on the Petition Date and does not propose to cure any arrearage through the Plan under 11 U.S.C. § 1322(b)(5).

B.   JURISDICTION

1.   This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

---

[1] Payments made to the Trustee and distributed by the Trustee are known as "conduit" payments. Mortgage loan payments in Chapter 13 are generally required to be paid through the Trustee, except as excused by the Trustee in his discretion.  E.D.N.C. LBR 3070-2(b).

2

2.      The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C.      DISCUSSION

1.      Section 1328 of the United States Bankruptcy Code ("Code") governs the discharge of debts upon completion of a Chapter 13 plan by a debtor and identifies certain debts which are excepted from discharge.  Section 1328(a)(1) of the Code excepts from discharge any debt "provided for[2] under section 1322(b)(5)."  11 U.S.C. § 1328(a)(1).

2.      Section 1322(b)(5) is a provision which allows a debtor to pay long-term debts over their contractual terms, rather than paying them in full during the plan period.  Specifically, § 1322(b)(5) states that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  11 U.S.C. § 1322(b)(5).

3.      The Debtor and the Trustee both assert that in order for § 1322(b)(5) to apply, a plan must provide for the curing of a default on a debt, in addition to providing for the maintenance of contractual payments on that debt.

---

[2] At the hearing, the Trustee submitted into evidence two examples of Chapter 13 Plan Debts Sheets ("Debts Sheets").  Both Debts Sheets addressed debts for which no arrears were to be paid under the plan.  The first, marked as Exhibit 1, referenced the underlying debt in the arrears section of the Debts Sheet.  The Trustee explained that the Honorable Randy D. Doub had found in *In re Jones*, 2009 Bankr. LEXIS 2327 (Bankr. E.D.N.C. July 28, 2009), that by referencing the debt in the arrears section of the Debts Sheet, the debtors had "provided for" the curing of a default pursuant to § 1322(b)(5), and the debt was excepted from discharge under § 1328(a)(1).  Exhibit 2 was a Debts Sheet which had "N/A" marked in the arrears section.  The Trustee asserted that Exhibit 2 did not "provide for" the curing of default, and therefore could not possibly implicate § 1328(a)(1).  These distinctions without a difference create drafting gamesmanship and encourage the parties to implement form over substance.  They distract from ascertaining the actual intent of the Code provisions.  This opinion will not address those drafting distinctions because the existence of a default and a proposed cure are not prerequisites to the application of § 1322(b)(5).

3

4. SECU, on the other hand, maintains that § 1322(b)(5) applies to all long-term debts provided for by a plan, regardless of whether the plan proposes to cure any default on those debts. This case presents a rare situation in Chapter 13 where the mortgage payment is not in arrears, and the loan is not in default. The court agrees with SECU.

5. The court has examined the relevant case law, and finds that

> notwithstanding the reference in § 1322(b)(5) to the 'curing of any default,' nothing in the statutory language suggests that the provision is restricted to circumstances where there is an existing default [on the petition date].

*Jones v. Branch Banking & Trust Co.*, No. 5:09-CV-00419-FL, slip op., at 5-6 (E.D.N.C. Feb. 9, 2010)[3] (quoting *In re Delauder*, 189 B.R. 639, 644 (Bankr. E.D. Va. 1995)); *see also In re Tollios*, 491 B.R. 886, 890 (Bankr. N.D. Ill. 2013) ("This phrase permits the continuation of monthly payments on 'any' long-term debt, not just long-term debt on which debtors owe pre-petition arrears. Thus, the language of § 1325(b)(5) makes it clear that debtors may maintain monthly payments regardless of whether they owe pre-petition arrears."); *Cloud v. CitiFinancial Inc. (In re Cloud)*, 2013 Bankr. LEXIS 393, at *4 (Bankr. S.D. Ga. Jan. 31, 2013) ("§ 1322(b)(5) encompasses all long-term debt, [and] not just debt with a prepetition default cured through the plan . . . ")

6. Although § 1322(b)(5) states that a plan may "provide for the curing of any default . . . *and* maintenance of payments," the court finds that the "and" linking the cure language and the maintenance of payments language is drafted to permit the debtor to cure arrearage, *if applicable*. The use of the word "and" does not suggest that both circumstances must be present in order for § 1322(b)(5) to apply.

---

[3] The *Jones* opinion was written by Chief United States District Judge Louise W. Flanagan, ruling on the appeal of Judge Doub's opinion that is referenced in footnote 1, above. While Judge Doub based his finding that § 1322(b)(5) applied on the fact that the debtors had included the debt in the arrears section of the Debts Sheet, Judge Flanagan's opinion focuses on the language and meaning of § 1322(b)(5), rather than on the fact that the debt was listed in the arrears section of the Debts Sheet.

4

7. Instead, the conjunction "and" linking the phrases "curing of any default within a reasonable time" and "maintenance of payments" allows the debtor "to ensure that the parties' original agreement is given effect if the debtor decides to take advantage of the longer repayment period [and needs to cure a default]." *Jones*, No. 5:09-CV-00419-FL, slip op., at 6. (citing *In re Litton*, 330 F.3d 636, 644 (4th Cir. 2003)). If the conjunction "and" were substituted with "or," then a debtor could choose one phrase to the exclusion of the other, even when both are applicable. A result would be that the debtor could elect to maintain the payments on the long-term debt and not provide for a cure of the arrearage while still qualifying for plan confirmation. This outcome would be nonsensical.

8. Furthermore, as Judge Flanagan noted in *Jones*, if default were required in order for a debtor to be permitted to maintain payments on a long-term debt pursuant to § 1322(b)(5), a debtor with long-term debt that is not in default would be precluded from taking advantage of the repayment period afforded by § 1322(b)(5). No. 5:09-CV-00419-FL, slip op., at 6.

9. The Honorable J. Rich Leonard, writing for this court, addressed the issue whether default is required in *In re Rogers*, 494 B.R. 664, 668 (Bankr. E.D.N.C. 2013). Judge Leonard, citing *Collier on Bankruptcy*, found that if a debtor has no pre-petition arrearages on a long-term debt, payments on that debt do not fall under § 1322(b)(5). *Rogers*, 494 B.R. at 669.

10. The language from *Collier* cited by Judge Leonard states that "a debt is not nondischargeable under this subsection simply because it is a long-term debt that could be cured under section 1322(b)(5); it is nondischargeable only if cure is, in fact, provided for by the plan." 8 *Collier on Bankruptcy* ¶ 1328.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

5

11.     *Collier* cites *In re Chappell*, 984 F.2d 775 (7th Cir. 1993), for this proposition; however, the *Chappell* court did not make that finding.  The *Chappell* court found that § 1322(b)(5) is permissive in nature, meaning that if a debtor does not wish to treat a debt as long-term, he is not required by § 1322(b)(5) to do so.  This court agrees with the *Chappell* decision, but disagrees with the conclusion made in *Collier*[4] and, subsequently, by Judge Leonard.[5]  A debtor is certainly not required to pay a long-term debt pursuant to § 1322(b)(5), but that choice is not dependent upon whether there is a pre-petition default to be cured.  Nothing about the permissive nature of § 1322(b)(5) suggests that a cure must take place in order for § 1322(b)(5) to apply. *See Chappell*, 984 F.2d at 781 (quoting *In re Hayes*, 111 B.R. 924, 926 (Bankr. D. Or. 1990)).

12.     If not paid pursuant to § 1322(b)(5), a long-term debt shall either be paid outside the plan (and thus shall not be included in a debtor's discharge), or the debt will be subject to the requirements of § 1325(a)(5).

13.     If a secured debt is paid pursuant to § 1325(a)(5), a debtor has three options with respect to the treatment of that debt:

   a.   The debtor may propose treatment which is acceptable to the holder of the claim (§ 1325(a)(5)(A));

   b.   The debtor may allow the holder of the claim to retain its lien until the earlier of payment of the underlying debt or the debtor's discharge (§ 1325(a)(5)(B)); or

   c.   The debtor may surrender the property (§ 1325(a)(5)(C)).

11 U.S.C. § 1325(a)(5).

---

[4] In fact, in ¶ 1322.09[1], footnote 4, Collier correctly summarizes the *Chappell* court's finding, which did not hold that cure must be provided for by the plan in order for § 1322(b)(5) to apply, but that a debtor may choose between the provisions of § 1325(a)(5) and § 1322(b)(5) when determining how to treat a long-term debt.

[5] *Rogers* did not reference the U.S. District Court decision of *Jones*.

14.     The Debtor has not proposed to surrender the property, and SECU's Motion includes an objection to confirmation of the Plan. If the court were to find that § 1322(b)(5) does not apply to the treatment of SECU's Claim, then § 1325(a)(5)(B) would require the Debtor to pay the Claim in full during the Plan period. That result is certainly not in the Debtor's favor.

15.     The Trustee has suggested to the court that the Debtor can treat SECU's Claim as a long-term debt without being subject to either § 1325(a)(5) or § 1322(b)(2), pursuant to § 1322(b)(11). Section 1322(b)(11) states that a plan may "include any other appropriate provision not inconsistent with this title." 11 U.S.C. § 1322(b)(11). The court is not persuaded by the Trustee's argument that the Debtor may treat the Claim as a long-term debt subject to discharge under the "catch-all" language of § 1322(b)(11). That treatment would be inconsistent with the policies behind Chapter 13 and would create a myriad of inconsistencies for debt treatment.

16.     If SECU's long-term debt were discharged, a number of unintended practical consequences would occur. The discharge injunction provided by § 1328 could prevent the creditor from contacting the debtor in the case of a missed or late payment, a shortfall in the escrow balance, or an advantageous modification agreement. The discharge is a sacred animal, and creditors would be hesitant to approach for fear of being bitten. Delaying the discharge on long-term debt until the debt is satisfied allows the parties to participate in their normal debtor-creditor relationship.

17.     SECU makes a supplemental argument that supports the court's decision. Section 1322(b)(2) prevents the modification of a claim when that claim is secured only by the debtor's principal residence. The Property is the Debtor's principal residence. A discharge of the Debtor's personal liability under the Claim is a modification of that loan, and the benefits of long-term debt repayment under § 1322(b)(5) are nullified.

18. The structure of Chapter 13 seeks to strike a balance between creditors' interests in being repaid and debtors' interests in being relieved from burdensome debt. A debtor should not be permitted to subject creditors to the restrictions imposed by the Code and, simply because the mortgage was current on the petition date, include that debt in the discharge, all the while making contractual payments as if the petition were never filed. *See* 8 Collier on Bankruptcy ¶ 1328.02[3][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) ("It would be inequitable to provide for the payment of long-term debts in accordance with an installment payment schedule extending beyond the term of the plan, and still discharge those debts upon completion of payments under the plan."). Such a scenario provides relief to a debtor with no corresponding benefit to the creditor and may actually cause potential harm to the creditor.

19. Similarly, a Chapter 13 bankruptcy only grants a discharge upon a debtor's completion of the plan. Granting a discharge on long-term debts prior to the final payment being made is not consistent with the underlying policies behind Chapter 13. It allows for an abuse of the process by allowing the debtor the reward of the discharge without meeting all of the obligations of paying the debt over the original term of the loan. A Chapter 13 debtor receives the benefit of the election to pay the debt over an extended period of time, rather than over the maximum five years under a plan. That benefit is met with the condition that failure to make those payments results in personal liability. The Debtor in this case will not discharge the SECU debt, as treated in the Plan, upon receiving his general discharge under § 1328.

20. If the Debtor wants to discharge the SECU Claim earlier, maybe a Chapter 7 would be more suitable; however, § 707 of the Code would implicate a whole new set of requirements and restrictions; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motion is denied and the Objection is sustained;

2. The Claim as provided for by the Plan shall be a long-term debt as provided in § 1322(b)(5), and pursuant to § 1328(a)(1), the Claim shall be deemed nondischargeable; and

3. The Trustee shall have 20 days from the date of this Order to file a subsequent Motion for Confirmation with terms consistent with this Order. If that Motion for Confirmation is not filed by that date, the case will be dismissed without further notice or hearing.

END OF DOCUMENT